# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| ADAM WOOD, *on behalf of himself and all others similarly situated*,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PLAIN GREEN, LLC;<br>PLAIN GREEN SPV1, LLC;<br>RECEIVABLES FUNDING II, LLC; and<br>METASOURCE, LLC.<br><br>　　　　　　　　　　　Defendants. | Case No. 4:26-CV-50-GNS<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Adam Wood ("Plaintiff") brings this class action lawsuit on behalf of himself and all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendants Plain Green, LLC ("Plain Green"), Plain Green SPV 1, LLC ("SPV"), Receivables Funding II, LLC ("Receivables"), and Metasource, LLC ("Metasource")(collectively, "Defendants"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

## NATURE OF THE ACTION

1. On its website, Plain Green advertises that most of its customers "turn to Plain Green as an emergency solution to avoid more costly forms of credit like payday loans or penalties from bounced checks or overdraft fees."[1]

2. In fact, Defendants take advantage of people at their most vulnerable, in desperate moments of financial hardship, and thumbs their nose at the statutory laws of the Commonwealth of Kentucky by employing a scheme to charge customers illegal usurious interest rates of 198 percent to 547 percent.

3. To do this, Defendants represents that Plain Green is a tribal lending entity that is wholly owned by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, (the "Tribe") a federally recognized Indian Tribe.[2] In reality, Defendants operate a "rent-a-tribe" scheme in order to circumvent state usury laws, including the laws of the Commonwealth of Kentucky.

4. A "rent-a-tribe" scheme is colloquial phrase used to describe the business practices of non-tribal payday lenders, including Defendants, hiding behind the guise of a Native American tribe in order to avoid usury laws by invoking sovereign immunity.

5. Plaintiff Adam Wood brings this action to secure redress from predatory and unlawful loans issued and enforced by Defendants.

6. Plaintiff seeks a declaratory judgment that the loans are void under KRS 360.010 (Count I), and damages pursuant to KRS 360.020 (Count II) and KRS 367.110 (Count III).

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as well as 1332(d) because this case is brought as a class action where the amount in controversy exceeds the

---

[1] *See* https://www.plaingreenloans.com/resources/about-us
[2] *Id.*

sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendants.

8. This Court has personal jurisdiction over Defendants because Defendants have intentionally directed their business activities in Kentucky, targeting the Kentucky market, and purposefully availed themselves of the privilege of conducting business in this state, including by targeting Kentucky as a state in which to offer loans. In addition, the conduct underlying the claims that caused Plaintiff's injuries took place in Kentucky, that is, Defendants entering into and collecting payment on its usurious loans occurred in this state, which was foreseeable to Defendants.

9. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because a substantial part of the events giving rise to this action occurred in this District, including entering into and collecting payment on the loans took place in this District.

## PARTIES

10. Plaintiff Adam Wood is a natural person who at all times relevant to this matter resided in Owensboro, Daviess County, Kentucky.

11. Plaintiff Adam Wood moved to Minot, North Dakota in or around November 18, 2024.

12. Defendant Plain Green, LLC is a limited liability company purportedly organized under the law of the Chippewa Cree Tribe of the Rocky Boy's Reservation. It uses the following addresses:

    a. P.O. Box 42560, Philadelphia, PA 19101;

    b. 1900 Frost Road, Suite 100, Bristol, PA 19007;

    c. 93 Mack Road, Suite 600, Box Elder, MT;

    d. P.O. Box 270, Box Elder, MT 59521;

13. Plain Green, LLC, operates an online lending website, https://www.plaingreenloans.com/ (the "Website"), and makes loans at interest rates of up to 547% to consumers in many states, including Kentucky.

14. Defendant Plain Green SPV 1, LLC is a limited liability company. It uses the address 93 Mack Road, Suite 500, Box Elder, MT.

15. Defendant Receivables Funding II, LLC is a limited liability company. Its registered agent and office is Vcorp Services, LLC, 108 West 13th Street, Suite 100, Wilmington, DE 19801. It also uses the following addresses:

    a. 44 South Broadway, 11th floor, White Plains, NY 10601-4411.

    b. c/o Basepoint Administrative, LLC, 75 Rockefeller Plaza, Suite 16c, New York, NY 10019.

16. Defendant Metasource, LLC is a limited liability company organized under Delaware law. It has offices at 1900 Frost Road, Suite 100, Bristol, PA 19007. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. It provides document processing and process management solutions.

## FACTS

17. Between January 11, 2023 and February 1, 2024, Plaintiff obtained the following loans from Defendants:

    a. January 11, 2023 Loan for $1,000.00 at 547.50% APR (Ex. 1)

    b. January 20, 2023 Loan for $1,200.00 at 416.36% APR (Ex. 2)

    c. June 22, 2023: Loan for $1,600.00 at 387.94% APR (Ex. 3)

   d.  August 7, 2023: Loan for $2,000.00 at 293.91% APR (Ex. 4)

   e.  February 1, 2024: Loan for $3,000.00 at 198.31% APR (Ex. 5)

 18. The Chippewa Cree Tribe is primarily located on the Rocky Boy's Reservation in northern central Montana.

 19. Plain Green claims to be an arm of the Tribe; however, upon information and belief, most if not all aspects of the lending operation are carried out on non-Tribal land, including lead generation, marketing, funding, underwriting, payment processing, and collection.

 20. For example, Plain Green SPV 1, LLC holds a security interest in consumer loans made by Plain Green, LLC and all proceeds thereof, pursuant to a Master Consumer Loan Purchase Agreement dated as of December 1, 2017. (*See* Ex. 6)

 21. Receivables Funding II, LLC holds a security interest in all assets of Plain Green SPV 1, LLC, pursuant to a Master Loan and Security Agreement dated December 5, 2017. (*See* Ex. 7)

 22. Upon information and belief, Receivables Funding II, LLC funds the loans made in the name of Plain Green, LLC, which then transfers the loans to Plain Green SPV 1, LLC.

 23. Upon information and belief, Defendant Metasource, LLC actually services and receives payment of the loans.

 24. Upon information and belief, the Tribe lends its name to the lending operation, performed by Defendants, but receives little to no benefit from the lending operation.

 25. Upon information and belief, the profits from the lending activities are received by non-members of the Tribe.

 26. Defendants regularly make loans to individuals in Kentucky at usurious rates of as low as 198% and nearly 550% and use the same standard form loan agreement.

27. The loans were obtained for personal, family, or household purposes and not for business purposes.

28. At no time have Defendants had a license from the Kentucky Department of Financial Institutions.

29. Defendants nevertheless advertise and make loans to Kentucky residents at rates greatly exceeding 8 percent.

30. Plaintiff signed the loan agreements electronically, while in Kentucky.

31. The funds were transferred electronically to Plaintiff's bank accounts in Kentucky.

32. Repayment was to be made by ACH debit from Plaintiff's bank account in Kentucky.

33. Plaintiff was a resident of Kentucky at all relevant times.

34. At no time did Plaintiff visit any business premises of any Defendants in connection with the loans.

35. Plain Green's website states that "[t]he offers advertised on this Site may be void in some states."[3]

36. Defendants intentionally violated Kentucky's rate limitations because they concluded Kentucky authorities were unlikely to take action to enforce their usury laws against them.

### KENTUCKY'S PROHIBITIONS ON PREDATORY LOANS
### Kentucky Revised Statutes Chapter 360

37. Effective July 14, 2018, KRS 360.010 governs the legal interest rate that may not be exceeded with respect to residents of the state. KRS 360.010 forbids, with limited exceptions that do not apply here, parties from agreeing to a per annum interest rate higher than 8%.

---

[3] *See* https://www.plaingreenloans.com/disclosures/disclosure-and-policies

38. Under KRS 360.020, the knowing "taking, receiving, reserving, or charging of an interest rate greater than is allowed by KRS 360.010 … shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it." Where greater interest has been paid, the statute provides for "twice the amount of interest thus paid from the creditors taking or receiving the same: provided, that such action commenced within two (2) years from the time that the usurious transaction occurred." KRS 360.020(1).

39. Any loans to Kentucky residents at more than 8% that are made by lenders violate KRS 360.010 and are subject to damages under KRS 360.020.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

40. In an attempt to evade prosecution under usury laws of states like Kentucky, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

41. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

42. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough*, 629 F.3d at 1183, 1187-88.

43. These so-called "tribal lenders" do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

44. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes, and, therefore, are not shielded by sovereign immunity.

45. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F.App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme, stating that sovereign immunity does not transform illegal loans into legal ones and that "reasonable people would know that collecting unlawful debt is unlawful").

46. Attempting to circumvent state interest caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC, 2024 U.S. Dist. LEXIS 155383 (S.D.N.Y Aug. 28, 2024); *aff'd by United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

47. Upon information and belief, off-reservation business operations, comprising substantially all of the company's functions, are conducted by and for the benefit of non-tribal members and investors.

48. The Tribe receives only a small fee while revenues primarily flow to non-tribal persons and entities.

49. Thus, the Tribe exerts no control over the business, how it is operated, who it lends to, and so forth.

## CLASS ALLEGATIONS

50. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2), on behalf of himself and the following class of similarly-situated persons:

> All persons residing in Kentucky who, within the relevant statutory period, entered into a loan agreement with Defendant Plain Green, LLC or one of Plain Green, LLC's subsidiaries/assumed names, and paid money pursuant to the agreement.

51. Plaintiff may alter the class definition to conform to developments in the case and discovery.

52. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

53. There are many questions of law and fact common to the claims of Plaintiff and the proposed members of the Class, and those questions predominate over any questions that may only affect individual members. Common questions for the Class include but are not limited to the following:

    a.    Whether the loans at issue are usurious under Kentucky law;

    b.    Whether the loans at issue are void as contrary to public policy;

    c.    Whether Defendants made deceptive, misleading, or false representations in connection with the loans;

    d.    Whether Plaintiff and the Class may recover money paid to Defendants pursuant to any of the loans;

    e.    Whether Defendants' conduct was willfully or knowingly unlawful.

54. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

55. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

### COUNT I
### VIOLATION of KRS 360.010
### Declaratory Judgment
### *(On behalf of Plaintiff and Kentucky Class Members)*

56. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

57. An actual and existing controversy of a justiciable nature exists between the parties with respect to the issues set out herein within the scope and meaning of 28 U.S.C. § 2201.

58. Defendants contracted for and collected loans at more than 8% interest from Plaintiff and the class members, in violation of KRS 360.010.

59. In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that these agreements are void and unenforceable against the Plaintiff and the class members.

## COUNT II
## VIOLATION of KRS 360.020
### *(On behalf of Plaintiff and Kentucky Class Members)*

60. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

61. Defendants have devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-tribe scheme.

62. Plaintiff has taken usurious loans from Defendants and was forced to personally guarantee these debts.

63. Defendants are not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

64. The interest charged by Defendants in connection with these transactions was in excess of the maximum interest rate permitted by KRS 360.010.

65. Plaintiffs have in fact paid Defendants interest in excess of the maximum interest rate permitted by KRS 360.010.

66. Defendants knowingly and willfully entered into the loans with usurious intent.

67. As a result of the foregoing illegal acts and practices, the Defendants have surrendered their right to collect any interest on any of these amounts.

## COUNT III
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
## KRS 367.110, et seq.
**(*On Behalf of Plaintiff & Kentucky Class Members*)**

68. Plaintiff and the Class repeat and re-allege all other paragraphs of the Complaint as if fully set forth herein.

69. Defendants are a "person" for purposes of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110, et seq.

70. Defendants' conduct as alleged herein occurred in the conduct of trade.

71. The KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade." Any person who "purchases or leases goods or services primarily for personal, financial, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Ky. Rev. Stat. § 367.170, may bring an action under the Rules of Civil Procedure . . . ." KRS 367.220.

72. Defendants violated the KCPA by intentionally violating Kentucky's rate limitations and attempting to circumvent state usury laws by fraudulently and deceptively hiding behind tribal sovereign immunity. Defendants had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the KCPA in the course of its business.

73. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair, fraudulent, and deceptive behavior.

74. Defendants' unfair, fraudulent, and deceptive conduct was either knowing, willful, and intentional, or, alternatively, demonstrated a lack of care, recklessness, or conscious disregard for the rights of Plaintiff and the Class, and thus Plaintiff and the Class are entitled to punitive damages.

75. Defendants are liable to Plaintiff and the class members for damages in amounts to be proven at trial, including attorney's fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other relief deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class Members demand judgment in their favor against Defendants Plain Green, LLC, Plain Green SPV 1, LLC, Receivables Funding II, LLC, and Metasource, LLC and seek an order:

a) Certifying the proposed Class;

b) Appointing Plaintiff as Class Representative;

c) Appointing counsel for Plaintiff as Class Counsel;

d) Permanently enjoining Defendants from engaging in the unlawful practices;

e) Awarding Plaintiff compensatory, direct, consequential, statutory, and punitive damages, including prejudgment interest, in an amount to be determined at trial;

f) Requiring Defendants to pay Plaintiff's attorneys' fees, costs, and expenses; and

g) Granting such other and further relief as is just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: January 30, 2026

Respectfully submitted,

**/s/ Amanda M. Lockaby**
Matthew T. Lockaby
Amanda M. Lockaby
Abigal C. Wearden
Lockaby PLLC
476 East High Street, Suite 200
Lexington, Kentucky 40507
Tele:   859.263.7884
Fax:    859.406.3333
Email: mlockaby@lockabylaw.com
           alockaby@lockabylaw.com
           awearden@lockabylaw.com

**/s/ Matthew J. Langley**
Matthew J. Langley
(*pro hac vice forthcoming*)
Almeida Law Group LLC
849 W. Webster Avenue
Chicago, IL 60614
Tele:   773.554.9354
Email: matt@almeidalawgroup.com

*Counsel for Plaintiff and the Class*